UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

COYWAE MCFARLANE,

    Petitioner,

                              Case No. 8:15-cv-1320-T-27AEP
                              Criminal Case No. 8:14-cr-487-T-27AEP

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

**BEFORE THE COURT** are Petitioner's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Judgment and Sentence by a Person in Federal Custody (cv Dkt. 14), memorandum in support (cv Dkt. 2), the Government's opposition (cv Dkt. 6) and supplemental opposition (cv Dkt. 23), and Petitioner's replies (cv Dkts. 11, 23) and affidavit (cv Dkt. 21). Upon consideration, the Amended Motion is **GRANTED** in part and **DENIED** in part.

### Procedural Background

Petitioner was charged by Complaint with being an alien unlawfully in the United States in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(5)(A) (cr Dkt. 1). The Office of the Federal Public Defender represented Petitioner at his initial appearance (cr Dkt. 4). He subsequently retained attorney Lisa McLean (cr Dkt. 7).

A three count Indictment charged Petitioner with being both a convicted felon and an illegal alien in possession of a firearm and ammunition, and being an aggravated felon alien found in the United States after deportation (cr Dkt. 9). Pursuant to a plea agreement, he pleaded guilty to all three counts (cr Dkts. 19, 22, 23), and was sentenced to 71 months on each count, concurrent (cr Dkt.

33). He did not appeal.

On June 1, 2015, he timely filed his original § 2255 motion (cv Dkt. 1) and memorandum in support (cv Dkt. 2). After the Government responded (cv Dkt. 6), he filed his reply, along with a motion for leave to amend his § 2255 motion (cv Dkts. 11, 12).[1] The motion to amend was granted, and the original § 2255 motion was dismissed as moot (cv Dkt. 13).

In his Amended Motion, he contends that his convictions violate double jeopardy in that Counts One and Two are based on possessing the same firearm and ammunition (cv Dkt. 14). And he contends that his attorney was ineffective in failing to (1) file a motion to dismiss either Count One or Two or to raise the issue on appeal; (2) file a motion to suppress; (3) request a downward variance based on his reasons for possessing a firearm; and (4) file a notice of appeal after being instructed to do so (*Id.*).

Petitioner was directed to file a sworn statement in support of his claim that his attorney was ineffective in failing to file an appeal, and the Government was directed to file a supplemental response addressing the double jeopardy claims (cv Dkt. 15). Petitioner filed his affidavit (cv Dkt. 21), and the Government filed its supplemental response (cv Dkt. 22), to which Petitioner replied (cv Dkt. 23).

## Standard of Review for Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel require satisfaction of the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed under the *Strickland* test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting

---

[1] It appears that Petitioner mailed his original reply and motion to amend to the United States Attorney's Office instead of the Court. The United States Attorney's Office received the filings on December 15, 2015, and at some point thereafter forwarded them to the Court.

therefrom. *Id.* at 687.

The first prong of the *Strickland* test requires a determination of whether counsel's performance fell below an "objective standard of reasonableness," viewing counsel's challenged conduct at the time of the conduct. 466 U.S. at 688, 690. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions with reasonable and competent judgment. *Id.* "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." *Chandler v. United States*, 218 F.3d 1305, 1313-14 (11th Cir.2000) (*en banc*) (quoting *Strickland*, 466 U.S. at 689 and *Darden v. Wainwright*, 477 U.S. 168 (1986)). For counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315.

As for the second prong, a reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A petitioner must show a "substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 536 U.S. 170, 189 (2011) (citation omitted). The petitioner must "affirmatively prove prejudice" to meet the second prong of an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 693.

If a petitioner does not satisfy both prongs of the *Strickland* test, "he will not succeed on an ineffective assistance claim." *Zamora v. Dugger*, 834 F.2d 956, 958 (11th Cir. 1987). *See also Weeks v. Jones*, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a claim of ineffective assistance of counsel may be resolved based solely on lack of prejudice without considering the reasonableness of the attorney's performance. *Waters v. Thomas*, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing *Strickland*, 466 U.S. at 697).

## Discussion

### I. Grounds One and Two

In Ground One, Petitioner contends that his convictions for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Count One) and an illegal alien in possession of the same firearm and ammunition in violation of § 922(g)(5) (Count Two) violate the double jeopardy clause. In Ground Two, he claims that his attorney was ineffective in failing to file a motion to dismiss as to either Count One or Two on that basis and/or appeal his convictions. He relies on *United States v. Munoz-Romo*, 989 F.2d 757, 759 (5th Cir. 1993). In *Munoz-Romo*, the Fifth Circuit found that convictions under 18 U.S.C. § 922(g)(1) and (g)(5) for possessing the same firearm on a single occasion violate double jeopardy, reasoning that "Congress, by rooting all the offenses in a single legislative enactment and including all the offenses in subsections of the same statute, signalled that it did not intend multiple punishments for the possession of a single weapon." *Id.*

*Munoz-Romo* relied on *United States v. Winchester*, 916 F.2d 601 (11th Cir. 1990), in which this Circuit held that "Congress did not intend to provide for the punishment of a defendant under two or more separate subdivisions of 18 U.S.C § 922(g)." *Id.* at 607. The court explained that to conclude otherwise would mean "a convicted felon who is also a fugitive from justice, a drug addict, a 'mental defective' and an illegal alien, could be sentenced to five consecutive terms of imprisonment for the same incident, namely, possession of a firearm." *Id.* at 607. *See also United States v. Richardson*, 439 F.3d 421, 423 (8th Cir. 2006) (holding that "Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification. . . " and remanding case to district court "to vacate

4

the sentence, merge the counts of conviction [for being a felon in possession of a firearm in violation of § 922(g)(1) and being a drug user in possession of a firearm in violation of § 922(g)(3)] into one count, and resentence the defendant based on a single conviction under 18 U.S.C. § 922(g).").

The Government maintains that Petitioner's convictions, even if multiplicitous, should stand because he received concurrent sentences and therefore suffered no prejudice. (Dkt. 22 at 2-3). Further, the Government contends that the test in *Blockburger v. United States*, 284 U.S. 299 (1932) should be applied to determine whether the convictions are in fact multiplicitous. (Dkt. 22 at 4). These arguments are unavailing.

With respect to the Government's argument that Petitioner failed to suffer prejudice from his concurrent sentences, this Circuit has determined that a concurrent sentence for multiplicitous convictions has the potential to "carry serious collateral consequences that cannot be ignored." *United States v. Bobb*, 577 F.3d 1366, 1372 (11th Cir. 2009). The Court concluded that where a double jeopardy violation occurs, and a defendant is sentenced "for the same offense under two separate counts, 'the only remedy consistent with the congressional intent is for the district court...to exercise discretion to vacate one of the underlying convictions. *Id.* (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985)). As for the Government's contention that the *Blockburger* test should apply, *Winchester* determined that it was Congress' intent that a defendant was not to be punished under two or more separate subdivisions of 18 U.S.C § 922(g) for a single incident of possession. 916 F.2d at 607.

It is undisputed that Petitioner's convictions for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and being an illegal alien in possession of the same firearm and ammunition in violation of § 922(g)(5) arose from a single occasion. Accordingly,

Petitioner's multiple convictions for violating § 922(g) violate the Double Jeopardy Clause. *See United States v. Garcia-Balderas*, 667 F. App'x 486, 486 (5th Cir. 2016) ("the simultaneous charges under § 922(g)(1) and (g)(5), which arise from the same single incident of possession of firearms, violate the constitutional prohibition on multiple punishments for one offence.")(citing *Munoz-Romo*, 989 F.2d at 759-60); *United States v. Dunford*, 148 F.3d 385, 389 (4th Cir. 1998) (holding that "while a person must be a member of at least one of the nine classes prohibited from possessing guns under § 922(g), a person who is disqualified because of membership in multiple classes does not thereby commit separate and multiple offenses.").

Generally, a guilty plea waives the right to raise a double jeopardy claim in a collateral attack. *Dermota v. United States*, 895 F.2d 1324 (11th Cir. 1990). An exception applies where "the State is precluded by the United States Constitution from haling a defendant into court on a charge. . . ." *Menna v. New York*, 423 U.S. 61 (1975) (citing *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) (holding double jeopardy claim not barred by guilty plea)). In *United States v. Kasier*, 893 F.2d 1300, 1302, 1303 (11th Cir. 1990), this Circuit found that the defendant's guilty plea to tax evasion and the lesser included offense of filing false tax returns did not waive his double jeopardy challenge because the case did not require the court to rely on evidence outside the guilty plea record to determine that the Double Jeopardy Clause was violated. Here, Petitioner brings his double jeopardy challenge based on the face of the Indictment and the record in his case. No evidence outside the guilty plea record is needed to determine that the punishment imposed violates double jeopardy. Accordingly, the claim is not waived.

As noted, Petitioner contends that his attorney was ineffective in failing to raise the double jeopardy claim. He is correct. Since *United States v. Winchester, supra*, was decided years before

Petitioner was indicted, a reasonable attorney should and would have discovered that the Double Jeopardy Clause was implicated by Petitioner's multiple count Indictment. For example, in *United States v. Ocampo*, 919 F.Supp2d 898, 909 (E.D. Mich. 2013), appellate counsel's failure to raise the unconstitutionality of multiplicitous sentences under § 922(g) constituted ineffective assistance. "While focusing on reducing Petitioner's sentence rather than correcting concurrent multiplicitous sentences is understandable, it nevertheless constitutes ineffective assistance of counsel." *Id.* And the Court found that counsel's deficient performance resulted in prejudice to the client:

> . . . the Supreme Court instructs: "The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. *Rutledge*, 517 U.S. at 302, 116 S.Ct. 1241 (emphasis in original) (quoting *Ball*, 470 U.S. at 864, 105 S.Ct. 1668); *see also United States v. Shea*, 211 F.3d 658, 673 (1st Cir. 2000) (vacating multiplicitous § 922(g) sentences).

*Ocampo*, 919 F. Supp. 2d at 909. The court explained that while it would have had no practical impact at sentencing, counts five and six of the defendant's conviction should have been merged into a single count. Petitioner was therefore entitled to have his sentence on count six vacated. *Id.* at 910.

Likewise, by failing to raise the issue of multiplicitous convictions and double jeopardy, Petitioner's attorney's performance fell below an "objective standard of reasonableness." Prejudice has been demonstrated by virtue of the additional special assessment and the potential collateral consequences arising from the additional conviction. And the failure to vacate convictions found to be multiplicitous is plain error. *Leist v. United States*, 517 Fed. Appx. 779, 780 (11th Cir. 2013) (per curiam).

Accordingly, Petitioner is therefore entitled to have his conviction on Count Two vacated, including the $100 special assessment imposed on that count.

7

**II.    Ground Three**

In Ground Three, Petitioner contends that he made repeated requests to his attorney to file a motion to suppress, but she failed to do so. He claims that there was no reasonable suspicion that he had committed a crime. The Government responds that this issue was waived when Petitioner entered a knowing and voluntary guilty plea. It argues alternatively that a motion to suppress would not have been successful, and therefore McLean cannot be found to have rendered deficient performance.

A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of his sentence. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (only an attack on the validity of the plea or events subsequent to the plea, including sentencing issues, can be sustained). Claims that trial counsel provided ineffective assistance with respect to a Fourth Amendment issue are among those waived by a knowing and voluntary guilty plea. *United States v. Winslow*, 2007 WL 2302277 at *2 (M.D. Fla. Aug.8, 2007); *Lipscomb v. Sec'y, Dep't of Corr.*, 2008 WL 434881 at *3–4 (M.D. Fla. Feb.14, 2008).

Here, Petitioner's ineffective assistance of counsel claim does not relate to his decision to plead guilty. He does not challenge the validity of the plea agreement. Nor does he claim that he did not knowingly or voluntarily enter into his guilty plea. Moreover, a review of the guilty plea hearing transcript (cr Dkt. 40) demonstrates that he completely understood the consequences of his guilty plea and pleaded guilty freely and voluntarily. Accordingly, this claim is waived.

Even if Petitioner had not waived this issue, he would not be entitled to relief. Failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To be entitled to relief based on counsel's failure to litigate

a Fourth Amendment claim, a petitioner must show that the Fourth Amendment claim is meritorious and that there is a reasonable probability that, but for his counsel's failure to file the motion to suppress, the outcome of the proceedings would have been different. *Id.* at 375.

According to the facts in the plea agreement, to which Petitioner agreed:

> On the afternoon of November 3, 2014, Tampa Police officers responded to a suspicious person report at the Sore Elbow Bar at 1213 Waters Avenue West, Tampa, Hillsborough County, Middle District of Florida (MDFL). When they arrived at the location, the officers observed a female in a black BMW and encountered the defendant behind the bar on the other side of a fence-line. They could smell the odor of burnt marijuana on the defendant and after he told them he was smoking marijuana, he was arrested. He identified himself as Raymond Etabert Codrington and produced his Florida Driver License stating the same. The female in the BMW stated that the BMW had been loaned to them by a dealership and granted the officers permission to search the car. Prior to the search, she told them that the defendant had a firearm in her purse in the back seat. Officers found the firearm, a Glock 9mm semi-automatic pistol, Model 26 Gen4, Serial No. XKX316, and two magazines containing 15 rounds of 9mm Luger ammunition.
>
> Post-Miranda, the defendant admitted that the firearm was his and that he bought it a few months prior at Shooters World in Tampa. He also admitted that his real name was Coywae McFarlane and that he had purchased the false identity from an unknown person in Miami to avoid being deported back to Jamaica for previous narcotics arrests.

(cr Dkt. 19, pp. 16-17; cr Dkt. 40, pp. 30-31.)

Considering these facts, Petitioner fails to establish a basis on which a motion to suppress would have succeeded. On the other hand, Attorney McLean avers that she advised Petitioner that there was no cognizable ground for a motion to suppress. She avers that based on her knowledge of the caselaw, a motion to suppress was not appropriate. (cv Dkt. 6-1, p. 1.). Her reasoning was reasonable. The smell of marijuana is sufficient to establish reasonable suspicion for further investigation into possible criminal conduct. *United States v. Hunter*, 373 Fed. Appx. 973, 976 (11th Cir. 2010) (citation omitted); *United States v. White*, 593 F.3d 1199 (11th Cir. 2010).

9

Since there was no basis to file a motion to suppress, McLean cannot be found ineffective in failing to file a futile motion. *Zakrewski v. McDonough*, 455 F.3d 1254, 1260-61 (11th Cir. 2006). Accordingly, Ground Three does not warrant relief.

## III. Ground Four

Petitioner contends that McLean "did nothing" in preparation for sentencing. He asserts that:

> ... McLean refused to do as little as to present the Court with important, relevant points in mitigation, which would have served as a basis for a downward variance. For example, as defendant made McLean aware, he had purchased the firearm for his own protection. Two verifiable facts supported his subjective belief that he needed a firearm: (1) two of his close friends had recently been murdered for reasons unknown to him, and (2) he was planning on starting a legitimate business that would deal with cash primarily in a neighborhood where robberies were commonplace. Still, McLean failed to bring these important sentencing factors to the court's attention.
>
> On April 22, 2015, Defendant appeared before the Court for the purpose of sentence imposition. McLean merely presented the Court with a benign argument that, since Defendant would be deported after serving his sentence, the Court might consider giving him a downward variance. . . .

(cv Dkt. 2, p. 2). He argues that had McLean advised the Court of his reasons for possessing the firearm, there is a reasonable probability that his sentence would have been less.

McLean avers that Petitioner's allegations with respect to her failure to seek a downward variance are blatantly false as demonstrated in the sentencing memorandum and transcript of the sentencing hearing (cv Dkt. 6-1, p. 2). Before the sentencing hearing, McLean filed a sentencing memorandum in which she sought a downward variance to a below guideline sentence, albeit on grounds other than those Petitioner raises in his amended § 2255 motion (cr Dkt. 32). McLean's sentencing memorandum explained Petitioner's difficult childhood, that he returned to the United States, admittedly illegally, to help his family, and the positive impact he had made on those around

10

him. McLean submitted several letters from Petitioner's family members and friends in support of his request for leniency (Id., pp. 7-31.)

Further, contrary to his claim, McLean did assert during the sentencing hearing that Petitioner purchased the firearm for protection (cr Dkt. 38, p. 9, lines 20-22). And she raised several arguments in support of a variance. She described Petitioner's difficult childhood and explained that he re-entered the United States for the sake of his children. She also focused on the fact that he had been working and, at the time of his arrest, was trying to open a restaurant (Id., pp. 7-10.)

While McLean did not focus on the specific variance argument that Petitioner now urges, he has not shown that her failure to make that argument was unreasonable or prejudice resulting thereof. Again, while it was not the focus of her argument, McLean did argue that Petitioner bought the firearm for protection and purchased it, albeit using a false identity, from a firearm dealer rather than off the street.

Neither *United States v. Lipscomb*, 619 F.3d 474, 477 (5th Cir. 2010), nor *United States v. Aranda-Daiz*, 31 F. Supp. 3d 1304 (D.N.M. 2014), support Petitioner's argument. In *Lipscomb*, the district court granted a downward variance on the grounds that the defendant did not actually own the shotgun and did not intentionally acquire it. Rather, he was driving a borrowed car and did not necessarily know the shotgun was in it. 619 F.3d at 486, n. 2. In contrast, according to the facts of his plea agreement, Petitioner agreed that the firearm was his (cr Dkt. 19, p. 17.) And while it is accurate that *Aranda-Diaz* claimed he purchased a firearm for protection as he had been shot five times and was concerned for his safety, the court expressly declined his request for a downward variance. 31 F.Supp.3d at 1131, 1137-38. Accordingly, Ground Four does not warrant relief.

## IV. Ground Five

Petitioner alleges, "Immediately following the pronouncement of that sentence, Defendant turned to McLean and explicitly instructed her to file 'for an appeal.' McLean responded, 'Okay.'" He claims that he "recently learned McLean failed to follow his explicit instructions and no notice of appeal had been filed." (cv Dkt. 2, p. 2). McLean claims that Petitioner never asked her to file a notice of appeal and told her that he did not wish for her to file a notice of appeal (cv Dkt. 6-1, p. 2).

Since Petitioner is entitled to have his sentence corrected as to Count Two and an amended judgment will be issued in his criminal case, he will have a right to appeal from that judgment. Accordingly, whether McLean was ineffective in failing to file a notice of appeal need not be addressed. *See United States v. Phillips*, 225 F.3d 1198 (11th Cir. 2000) (when district court concludes out-of-time appeal in a criminal case is warranted as the remedy in a Section 2255 proceeding, the proper procedure is to vacate and reimpose defendant's sentence, thereby permitting an appeal within the specified time after the resentencing).

Accordingly,

1) The Amended Motion (cv Dkt.14) is **GRANTED** as to Grounds One and Two, and otherwise **DENIED**.

2) The **Clerk** shall enter a judgment in the civil case granting in part the Amended Motion.

3) The Judgment in Case No. 8:14-cr-487-T-27AEP (cr Dkt. 34) is **VACATED**.

4) Petitioner is to be sentenced to the same sentence on Counts One and Three as originally imposed in Case No. 8:14-cr-487-T-27AEP (cr Dkt. 34 ). Count Two is dismissed and the special assessment is reduced to $200. A new Judgment will issue.

5) Petitioner has a right to appeal the new Judgment to be entered pursuant to this Order. He must file a notice of appeal within fourteen (14) days of the entry of the new Judgment. Fed.R.App.P. 4(b)(1)(A)(I).

6) Petitioner is entitled to proceed *in forma pauperis.* The Office of the Federal Public Defender is appointed to represent Petitioner on appeal from the new criminal Judgment.

7) The **Clerk** shall file a copy of this Order in the criminal case file, along with a certified copy of the civil judgment, and close the civil case file.

**DONE and ORDERED** on May 23, 2018.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record; Offie of the Federal Defender; Petitioner *pro se*